# EXHIBIT 1



Dear _____:

Please complete in full and provide the following documents so that our credit department may expedite the processing of your application.

1. **Customer Application**

2. **Terms and Conditions form**

3. **Voided check**

4. **A copy of your 3 most recent and consecutive account statements from your current pharmaceutical distributor**

5. **Copies of your 2 most recent annual balance sheets and income statements (if applicable based on credit limit)**

Please be assured that this information will be held strictly confidential.

Thank you for your consideration.

Peter Dahlstrom
_____     _____     _____
**McKesson Account Manager**              **Phone#**                **DC#**

Updated 09/23/10

Exhibit 1
Page 1 of 3

DocuSign Envelope ID: 4E359ABF-CA6A-47F7-9E75-DD93A59F8458

# McKESSON

McKesson Corporation and its affiliated companies (collectively referred to as "**McKesson**")

## CUSTOMER APPLICATION
(Please print in block letters)

CD01-P   V.01-11

**Type of Business:** ☐ Acute ☐ Primary Care ☐ Specialty ☐ Home Health ☐ Extended ☐ Long Term ☒ Pharmacy ☐ Closed Door ☐ Mail Order ☐ Supplier ☐ Other _____

| Field | Value |
|---|---|
| Legal Company Name | Premier Pharmacy Group |
| Website Address | www.premierrxgroup.com |
| Federal Tax ID / EIN | [redacted] |
| Legal Address (Main Office) | 4162 E. Bijou Street |
| City | Colorado Springs |
| State | CO |
| Zip | 80909 |
| Contact Name | Lauren Hawcroft |
| Title | CFO |
| Phone | 7198381470 |
| Billing / Statement Address | 4162 E. Bijou Street |
| City | Colorado Springs |
| State | CO |
| Zip | 80909 |
| Accounts Payable Contact Person | Accounts Payable |
| Accounts Payable Telephone | 8334649129 |
| Accounts Payable Email | ap@rxppg.com |

**Shipping Information:** ☒ If more than 1 Ship-to, please attach multiple Ship-to's Information

| Field | Value |
|---|---|
| DBA or Business Trade Name of Account | Premier Pharmacy Group |
| Estimated Monthly Purchases | $150000.00 |
| Initial Order | $20 |
| Number of Employees | (see Initial Order field) |
| Ship to Address | 4162 E Bijou Street |
| City | Colorado Springs |
| State | CO |
| Zip | 80909 |
| Ship to Contact Person | Lauren Hawcroft |
| Ship to Telephone | 7198381470 |
| Ship to Email | lhawcroft@rxppg.com |

YEAR established: 2016
YEAR Current Ownership: 2019
State Org: Colorado
Has applicant, applicant's parent or affiliates ever filed for bankruptcy? ☒ No ☐ Yes, attach explanation

**Ownership Type:** ☐ Proprietorship ☐ Partnership ☐ Limited Partnership ☒ Limited Liability Company ☐ Private Corp ☐ Public Corp ☐ Professional Corp ☐ Non-Profit Corp ☐ Government

| Principal Owner(s) or Stockholder(s) | % Ownership | Social Security Number(s) |
|---|---|---|
| David Reed | 100 | [redacted] |

NAME OF CONTROLLING ENTITY (if any): 
Applicant's relationship to controlling entity: 
Phone: 
Address of Controlling Entity: 
City: 
State: 
Zip: 

**REFERENCES:**

| Primary Bank/Financial Institution | Account Number | Contact Name | Phone |
|---|---|---|---|
| Tinker FCU dbs Prime Business Solutions | [redacted] | Cathy Donald | 4053402775 |
| Primary Supply Provider: Cardinal Health | [redacted] | Eric Siefert | 6149455468 |
| Primary Technology Provider: Frameworks | Premier Pharmacy Group | Nancy Zimmerman | 4124929841 |

**Additional Information Required** (If applicable, please attach these documents to this application):
- ☐ Copy of Resale/Tax Exemption Certificate
- ☒ Copy of DEA Registration, State Pharmacy License, or Medical License
- ☒ Copies of 3 most recent and consecutive primary supplier statements
- ☒ Annual Financial Statements for the past 2 years (including balance sheet, income statement, and cash flow statements)

DEA#: _____   HIN#: _____   Medical License # & State: _____

This section applies to all accounts with MCKESSON CORPORATION and its affiliated companies ("McKesson"). Customer agrees to abide by (I) standard terms of sale provided or made available by McKesson and/or shown on McKesson's invoices or statements and (II) any written agreement or terms of sale with McKesson governing Customer's account. Customer agrees to pay for all purchases, fees and other charges incurred by Customer or an authorized user on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed to a third-party agent on behalf of Customer). Any payment made after the net due date shall result in the loss of any prompt cash payment discount specified on the related invoice or statement and Customer shall pay the gross amount plus any applicable service charges. Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson Corporation or any of its affiliates. McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), to limit total credit and/or to suspend or discontinue the shipment of any orders to Customer if McKesson concludes that (I) there has been a material adverse change in the Customer's financial condition or payment performance or (II) Customer has ceased or is likely to cease to meet McKesson's credit requirements.

Customer represents that it is entitled to discounted prices from manufacturers as it has notified McKesson ("**Contract Prices**"). In consideration of McKesson allowing Customer to purchase products at Contract Prices, Customer represents that McKesson will be paid by the appropriate manufacturer the difference between McKesson's acquisition price and the Contract Price ("**Chargeback**") and Customer will be liable to McKesson for any unpaid Chargeback if any manufacturer (I) denies a Chargeback for any reason, (II) makes an assignment for the benefit of creditors, files a petition in bankruptcy, is adjudicated insolvent or bankrupt, or if a receiver or trustee is appointed with respect to a substantial part of its property or a proceeding is begun which will substantially impair its ability to pay Chargebacks or (III) fails to pay McKesson Chargebacks for any reason other than McKesson's gross negligence.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating due to race, color, religion, national origin, sex, marital status, age; or because all or part of the Customer's income is from any public assistance program; or the Customer, in good faith, exercises any right under the Consumer Credit Protection Act. The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580 administers compliance with this law. Customer represents and warrants that Customer has read and understands this form and has reviewed the information provided in its entirety, including responses completed for Customer by a McKesson representative, and that all information is complete and correct. Customer agrees that McKesson will be relying on such information and will notify McKesson of any material changes to such information.

Customer agrees to provide McKesson with financial statements upon request. Customer authorizes McKesson, its employees, representatives, and agents to (I) investigate information provided and Customer's credit, financial and banking records, (II) obtain Customer's credit bureau report and (III) share with its affiliates experiential and transactional information regarding Customer and Customer's account. McKesson is authorized to retain information obtained as part of the application process whether or not the requested account and/or credit is granted. Customer agrees to pay all reasonable attorney fees and expenses or cost incurred by McKesson in enforcing its rights to collect amounts due from Customer. This form and any account opened in favor of Customer are subject to credit approval by McKesson.

By signing below, the undersigned authorized McKesson to order a consumer report related to the business principal(s) to determine credit eligibility.

| Authorized Signature | Print Name | Title | Date |
|---|---|---|---|
| /s/ Lauren Hawcroft (DocuSigned) | Lauren Hawcroft | CFO | 5/23/2022 |

*(By signing, I represent that I have sufficient authority to execute this application on behalf of the applicant and bind the applicant to the terms hereof)*

Exhibit 1
Page 2 of 3

DocuSign Envelope ID: 4E359ABF-CA6A-47F7-9E75-DD93A59F8458

**McKESSON**

Companies (collectively referred to as "**McKesson**")

## TERMS AND CONDITIONS
(Please print in block letters)

CD03-P   V.10-15

Legal Company Name: **Premier Pharmacy Group**         Customer DBA Name: ____
Address: **4162 E. Bijou Street**     City: **Colorado Springs**   State: **CO**   Zip: **80909**

### CUSTOMER SET UP & AUTHORIZATION FOR AUTOMATED CLEARING HOUSE ("ACH") CREDITS AND DEBITS (electronic payment)

Bank Name: **Tinker FCU dba Prime Business Solutions**     Bank Transit ABA#: [redacted]
Bank Address: **1016 W. Covell Rd.**                     Bank Account #: [redacted]
City: **Edmond**    State: **OK**   Zip: **73003**       Bank Phone Number: **4053402775**

Statement-delivery preference: Check ONE:   ☒ Email   ☐ Fax
Authorized Contact Name: **Cathy Donald**                Phone: ____   Fax: ____
Email: **donaldc@tinkerfcu.org**                         Alternate Contact Name/Phone: ____

**************** IMPORTANT: Please attach a copy of a voided check ****************

Customer authorizes McKesson Corporation, A Delaware Corporation, for itself and as collection agent for any of its affiliates (collectively "**McKesson**"), to initiate ACH credit and debit entries to/from Customer's business account indicated above for amounts owed on invoices or statements that are provided to Customer and Customer hereby authorizes the financial institution named above (the "**Institution**"), to accept the ACH credit and debit entries. Authority to initiate ACH credit and debit entries shall remain in full force and effect until McKesson's Credit Department has received written notice from Customer 30 days in advance of its termination of such authorization. Customer understands that Customer has the legal right to stop payment of an ACH credit or debit entry by notification to Institution; provided, prior to such action, Customer shall give McKesson 30 days written notice to permit McKesson to take any necessary actions to avoid disruptions in payments from Customer. Customer agrees to follow NACHA rules applicable to ACH transactions.

Customer agrees to pay for all purchases, services, fees and other charges incurred by Customer, any employee or other agent (whether acting under authority of the Customer or otherwise) on any account of Customer, including service charges on past due amounts at the highest rate permitted by law (including purchases shipped and/or billed or services provided to a third-party agent on behalf of Customer). Customer agrees to pay all reasonable attorney fees and expenses or costs incurred by McKesson in enforcing its rights to collect amounts due from Customer. Without limiting McKesson's other legal rights, McKesson may exercise a right of set-off against amounts due Customer from McKesson. McKesson reserves the right, in its sole discretion, to change a payment term (including imposing cash payment upon delivery), to limit total credit and/or to suspend or discontinue the shipment of any orders or the providing of any service, software, support or implementations to Customer if McKesson concludes that (I) there has been a material change in the Customer's financial condition or payment performance or (II) Customer has ceased or is likely to cease to meet McKesson's credit requirements.

_[signature: Lauren Hawcroft]_
**AUTHORIZED SIGNATURE**   Print Name: **Lauren Hawcroft**   Title: **CFO**   Date: **5/23/2022**
(By signing, I represent that I have sufficient authority to execute this application on behalf of the applicant and bind the applicant to the terms hereof)

**This section applies to all accounts with MCKESSON CORPORATION DRUG COMPANY**

Please select one:
☐ **Weekly Payment Terms:** Purchases for invoices from Monday – Friday are due by Tuesday of the following week via Automated Clearinghouse (ACH) or other Electronic Funds Transfer (EFT) method acceptable to McKesson. The debit will be initiated by McKesson.

☒ **Semi-Monthly Payment Terms:** Payment is made from statement, with invoices dated from the 1st – 15th due at McKesson's "remit to" address on the 25th and invoices dated from the 16th – the last day of the month due at McKesson's "remit to" address on the 10th of the following month via Automated Clearinghouse (ACH) or other Electronic Funds Transfer (EFT) method acceptable to McKesson. The debit will be initiated by McKesson.

**Security Interest:** In order to secure timely and full payment and performance of all present and future obligations of Customer to McKesson Corporation and any of its affiliates (collectively referred to as "**McKesson**") (all collectively referred to as the "**Obligations**"), including, without limitation, all promissory notes, direct loans or sales on credit, Customer hereby grants to McKesson Corporation, for the benefit of McKesson, a security interest in all of Customer's right, title and interest in and to its personal property, whether now owned or hereafter acquired, including, without limitation, all Accounts, Cash, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Health Care Insurance Receivables, Instruments, Inventory, Investment Property, Letter-of-Credit Rights and promissory notes, together with all attachments, replacements, substitutions, additions and accessions, and all Proceeds and products thereof and all books and records relating to any of the foregoing (collectively, the "**Collateral**"). Capitalized terms used herein that constitute Collateral shall have the meanings given to such terms under the California Uniform Commercial Code. All items of Collateral shall remain personal property and not become part of any real estate regardless of the manner of affixation. The security interest granted hereby shall be deemed to constitute a purchase money security interest in any and all Collateral (including, without limitation, all Goods, Inventory and Equipment) purchased by Customer either directly from McKesson (thereby securing payment of the purchase price) or from a third party using proceeds of loans or advances made by McKesson (thereby securing repayment of such loans or advances). Customer authorizes McKesson to send notices to any other persons claiming a security interest in any of the Collateral. **By its signature below, Customer acknowledges that McKesson Corporation shall file a UCC-1 financing statement with the applicable state agency in order to perfect the security interest granted hereby.**

_[signature: Lauren Hawcroft]_
**AUTHORIZED SIGNATURE**   Print Name: **Lauren Hawcroft**   Title: **CFO**   Date: **5/23/2022**
(By signing, I represent that I have sufficient authority to execute this application on behalf of the applicant and bind the applicant to the terms hereof)

**Guaranty:** The undersigned (individually or collectively, the "**Guarantor**") hereby jointly and severally guarantees to McKesson Corporation and its affiliates (collectively referred to as "**McKesson**") that Customer will fully and promptly perform and pay all its present and future obligations to McKesson, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured, and whether originally contracted with McKesson or otherwise acquired by McKesson. This guaranty applies to all of Customer's obligations to McKesson, even if such obligations are invalid or unenforceable against Customer for any reason and even if any security for such obligations is insufficient, invalid, unenforceable or not perfected. This guaranty is an absolute and unconditional guaranty of payment. It is a continuing guaranty and covers any future extensions of credit by McKesson to Customer. This guaranty is a guaranty of payment when due and not merely of collectability after judgment or other action against Customer.

McKesson may at any time, without Guarantor's consent, without notice to Guarantor and without affecting or impairing Guarantor's obligations under this guaranty, do any of the following: (I) renew, modify (including any increase or decrease in the rate of interest), or extend any obligations of Customer, of co-guarantors (whether hereunder or under a separate agreement) or of any other party at any time directly or contingently liable for the payment of any of Customer's obligations; (II) enter into additional extensions of credit to Customer; (III) accept partial payments of Customer's obligations; (IV) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of Customer's obligations and the security therefore in any manner; (V) consent to the transfer of security; or (VI) bid and purchase at any sale of security. Guarantor agrees, without McKesson first having to proceed against Customer or any security held by McKesson, to pay on demand (I) all sums due and to become due to McKesson from Customer and (II) all losses, costs, attorney's fees or expenses which may be suffered by McKesson by reason of Customer's default on its obligations or Guarantor's default under this guaranty. Guarantor agrees to pay on demand any deficiency resulting from a sale of security held by McKesson even if the sale is made without notice to Guarantor. Guarantor's obligations under this guaranty are independent of and separate from the obligations of Customer. Upon the occurrence and during the continuance of any default by Customer, McKesson can sue any Guarantor separately from Customer, whether or not McKesson sues Customer in such lawsuit and whether or not McKesson sues Customer in a separate lawsuit. If McKesson elects to proceed with any course of action under this guaranty or against Customer, that election shall not preclude McKesson from taking any other course of action. This guaranty shall not be affected by any termination or change in the relationship between Guarantor and Customer. Guarantor assumes all responsibility for keeping informed of (I) Customer's financial condition and assets, (II) all other circumstances bearing upon the risk of nonpayment of Customer's obligations to McKesson and (III) the nature, scope and extent of the risks which Guarantor assumes and incurs under this guaranty. Guarantor agrees that McKesson shall have no duty to advise Guarantor of information known to McKesson regarding such circumstances or risks. Guarantor waives (I) notice of McKesson's acceptance of this guaranty, (II) presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to McKesson by Customer, (III) any other demands and notices required by law and (IV) all set-offs and counterclaims.

Name (Guarantor 1): **David Reed**   Home Address: **50 N. Depot Street**   City: **New Palestine**   State: **IN**   Zip: **46163**

**Guarantor 1 Signature:** _[signature: David Reed]_   Date: **5/24/2022**   Last 4 digit SSN: [redacted]
(This section must be signed by an owner/principal)

Name (Guarantor 2): ____   Home Address: ____   City: ____   State: ____   Zip: ____

**Guarantor 2 Signature:** ____   Date: ____   Last 4 digit SSN: ____
(This section must be signed by an owner/principal)

Exhibit 1
Page 3 of 3